IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States District Court
Southern District of Texas
FILED

MAR 0 5 2010

Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. Cr-H-09-629 |
| | § | |
| JOHN JOSEPH O'SHEA, | § | |
| Defendant. | § | |

## DEFENDANT O'SHEA'S NOTICE OF STATUS OF DISCOVERY

TO THE HONORABLE LYNN N. HUGHES, UNITED STATES DISTRICT JUDGE:

Defendant O'Shea files this Notice of Status of Discovery to provide notice to the Court regarding the status of discovery in this case, in anticipation of the status conference set for this afternoon.

Defendant O'Shea had hoped at today's conference to have examined the Department of Justice's ("DOJ") database sufficiently to discuss what further discovery was necessary to prepare Mr. O'Shea's defense. Since counsel received the DOJ's files via portable hard drive on around January 21, however, paralegal Stephanie Brown has had to devote over forty hours to attempting to load the files onto our system. Some of this work occurred because the files sent by the DOJ were corrupt. Much of the rest of this work could have been avoided if the records had been produced in a more organized fashion without folders filled with duplicates and mismatched titles, or if the DOJ had simply explained the records' obscure organizational scheme and pointed out which portions of databases contained duplicates.

Even now, Defendant has two databases that are not functional. One of these databases has been sent to us three times due to corruption. Counsel is continuing to work with IT advisors and Concordance technical support to solve the remaining problems with the records.

The undersigned counsel normally uses Summation as our electronic discovery software program. When counsel first received the DOJ's data in this case, we opted to pay for

Concordance licenses so that we could view the documents on the same software used by the DOJ. The alternative was to convert the documents to Summation format. Counsel hoped that the licensing fees and difficulties in learning the new software would be offset because we would avoid extra conversion costs and man hours and lower the risk of corruption of data. But instead we have had repeated problems with corruption and unnecessary time and money spent on menial technical issues never imagined by paralegals in the past. These difficulties with the databases lead to the suspicion that others with whom the records have been shared have not spent much time in reviewing them.

A significant proportion of paralegal hours could have been saved had DOJ been more diligent. Defendant thus seeks any appropriate relief from the Court.

A further description of the technical difficulties that have to date delayed meaningful document review is as follows:

- The hard drive came with a password but no download instructions on about January 21, 2010. Paralegal Stephanie Brown could not access even a password screen and called the DOJ in confusion; she learned from Brian Huber of DOJ's IT Department that she needed a "True Crypt" download, which was not included with the hard drive. Brian sent the download to Stephanie.
- Counsel were provided a Note to User within the hard drive regarding the "Basurto_Production_Edocs.Tex" file, noting that this text file needed to be cut and pasted into the database files for technical reasons. By separating the text file from the other files initially, DOJ increased the risk that the associated database would become corrupt, and indeed, it did become corrupt.
- The hard drive contained about 20 separate Concordance databases, all of which had to be separately created. Some files were in Concordance Version 9 and others in Version 10. Concordance forced Stephanie to convert each database to version 10.
- The organization of the files was such that Stephanie had to spend considerable time trying to locate the appropriate log files and image files associated with the database structure. The locations for the image files and log files were not consistent from database to database, causing hunting expeditions.
- The files provided were given to us in two folders: a content folder and a database folder. Stephanie eventually realized as she became more familiar with the data provided that there were duplication and discrepancies in the data. She would find database structure and content in the "content folder" as well as the "database folder." She was not clear as

to what database was intended to be loaded. She had already loaded eleven databases from the "content" folder that was clearly marked, "ABB Production.DCB," etc. She called Brian Huber to clarify. He said to disregard the databases in the "content" folder, that the "database" folder should take priority. It would have saved much work if he had told us that when we first received the hard drives.

- Stephanie then focused on the "database" folder and recreating databases. In doing so, she learned that "disregarding" the "content" folder was not always possible; she still needed contents from that folder --she just had to disregard the database (.dcb) structure.
- Throughout this process, Stephanie sought technical assistance from Concordance specialists, who frequently commented on the confusing structure of the databases.
- Additionally, the folder content with regard to images was disorganized, requiring additional work and creativity. For example, the name on a folder might be "Vol. 1" but the log file would be "Vol. 4," requiring Stephanie to go through the process of correcting the image paths while noting the discrepancies.
- Another issue was that an original database in the "content" folder that Stephanie was told to disregard was originally named "302s and GJ Materials." Within this folder are the images and log files for the database folder named "Grand Jury Materials and Interview Summaries." Stephanie learned how these folders matched up only because she spent additional time receiving the error messages on the image paths and had to troubleshoot and put the pieces of the puzzle together and match up in each folder within the "content" folder and figure where the placement of appropriate files are to complete the database.
- Additionally, various folders bear the name, "Basurto Production database," causing confusion, and the Basurto Production in particular has six similarly-named productions within it. Only through troubleshooting has Stephanie learned to distinguish the folders by location.
- The Basurto Production EDocs database was nonresponsive and corrupt. Stephanie called Brian Huber to request copies to be sent to us. We received four DVDs; she was still having trouble accessing the files. Stephanie called Brian, but he did not understand the problem and asked whether Stephanie could have someone with expertise look at it. it. Ultimately, counsel's IT advisor looked at it and determined that the four DVDs were corrupt. Stephanie purchased a second portable hard drive and had it shipped to Brian to obtain the data.
- The second time, the documents uploaded, but Stephanie ran into security clearance issues from Concordance because she did not have the same administrative rights as Brian. That issue is still being addressed by Concordance and counsel's IT advisor, blocking the last databases from at last becoming accessible.

Respectfully submitted,

/s/ Joel Androphy
Joel Androphy
State Bar No. 01254700
S.D. Tex. 53457
Sarah M. Frazier
State Bar No. 24027320
S.D. Tex. 27980
Ashley Gargour
State Bar No. 24065272
S.D. Tex. 1040478
Berg & Androphy
3704 Travis Street
Houston, Texas 77002
Telephone (713) 529-5622
Facsimile (713) 529-3785
Email: jandrophy@bafirm.com
Email: sfrazier@bafirm.com
Email: agargour@bafirm.com

**ATTORNEYS FOR DEFENDANT
JOHN JOSEPH O'SHEA**

## CERTIFICATE OF SERVICE

On March 5th, 2010, a true and correct copy of the foregoing document was served on counsel via certified mail return receipt requested, facsimile, or electronically through the CM/ECF System.

/s/ Joel Androphy