# Exhibit B

JANET I. LEVINE (STATE BAR NO. 94255)
MARTINIQUE E. BUSINO (STATE BAR NO. 270795)
Crowell & Moring LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071-2258
Phone: (213) 622-4750
Fax: (213) 622-2690
EMAIL: jlevine@crowell.com
EMAIL: mbusino@crowell.com

Attorneys for Defendant
Steve K. Lee

JAN L. HANDZLIK (STATE BAR NO. 47959)
GREENBERG TRAURIG LLP
2450 Colorado Avenue, Suite 400 East
Santa Monica, CA 90404
Phone: (310) 586-6542
Fax: (310) 586-0542
EMAIL: handzlikj@gtlaw.com

Attorneys for Defendants Lindsey Manufacturing
Company and Keith E. Lindsey

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ENRIQUE FAUSTINO AGUILAR NORIEGA, ANGELA MARIA GOMEZ AGUILAR, LINDSEY MANUFACTURING COMPANY, KEITH E. LINDSEY and STEVE K. LEE, <br><br> Defendants. | CASE NO. CR 10-1031(A)-AHM <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT FOR VIOLATIONS OF *BRADY V. MARYLAND* OR, IN THE ALTERNATIVE, FOR SANCTIONS; EXHIBITS** <br><br> Date: March 28, 2011 <br> Time: 3:00 p.m. <br> Place: Courtroom 14 |

MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT FOR VIOLATIONS OF
*BRADY V. MARYLAND*, OR IN THE ALTERNATIVE, FOR SANCTIONS

1

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

I. INTRODUCTION ........................................................................................................ 2

    A. The Internal Revenue Service Interview Memorandum, the Comisión Federal de Electricidad Spreadsheets and PowerPoint Presentations ............................................................................. 2

    B. Whether Awarded by Bid or Direct Order, Nothing Was Out-of-Order with LMC's Contracts with CFE, and The Contracts Conformed with CFE Contracting Requirements ............ 4

    C. The Government's February 15, 2011 Witness List ......................... 5

    D. The Government's February 15, 2011 Discovery Production .......... 6

II. THE DICTATES OF *BRADY v. MARYLAND* ............................................... 8

    A. The *Brady* Violation ........................................................................ 10

    B. The Prejudice ................................................................................... 13

    C. The Remedy ..................................................................................... 13

III. CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brady v. Maryland*,
    373 U.S. 83 (1963) .................................................................................................. passim

*United States v. Stevens*,
    No. 08-CR-231 (EGS), 2009 WL 6525926 (D.D.C. Apr. 7, 2009) ..................... 8

*United States v. Torres-Ramos, et al.*,
    No. CR 06-656(A)-SVW (C.D. Cal.) ............................................................... 9

*United States v. W.R. Grace, et al.*,
    No. CR 05-07-M-DWM (D. Mont.) ......................................................... 8, 9, 14

OTHER AUTHORITIES

*DOJ Memorandum for Department Prosecutors: Guidance for Prosecutors Regarding Criminal Discovery*, January 4, 2010 ...................................................... 9

Federal Rule of Criminal Procedure 15 .................................................................. 13

TO: UNITED STATES ATTORNEY ANDRÉ BIROTTE JR., ASSISTANT UNITED STATES ATTORNEY DOUGLAS M. MILLER, AND UNITED STATES DEPARTMENT OF JUSTICE SENIOR TRIAL ATTORNEY NICOLA J. MRAZEK:

PLEASE TAKE NOTICE that on Monday, March 28, 2011 at 3:00 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable A. Howard Matz, defendants Lindsey Manufacturing Company, Keith E. Lindsey, and Steve K. Lee, by and through their counsel of record, will move to dismiss the First Superseding Indictment for violations of *Brady v. Maryland*, 373 U.S. 83 (1963), or in the alternative, for sanctions.

This motion is based on the accompanying Memorandum of Points and Authorities, attached exhibits, all files and records in this case, and any such arguments and evidence as may be presented at or before the hearing on this Motion.

DATED: March 22, 2011　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　JANET I. LEVINE
　　　　　　　　　　　　　　　　CROWELL & MORING LLP

　　　　　　　　　　　　　　　　By: /s/ Janet I. Levine  _____
　　　　　　　　　　　　　　　　JANET I. LEVINE
　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　Steve K. Lee

DATED: March 22, 2011　　　　JAN L. HANDZLIK
　　　　　　　　　　　　　　　　GREENBERG TRAURIG LLP

　　　　　　　　　　　　　　　　By: /s/ Jan L. Handzlik_____
　　　　　　　　　　　　　　　　Attorneys for Defendants
　　　　　　　　　　　　　　　　Lindsey Manufacturing Company and
　　　　　　　　　　　　　　　　Keith E. Lindsey

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government's purposeful suppression of materials subject to *Brady v. Maryland*, 373 U.S. 83 (1963) warrants dismissal of the First Superseding Indictment ("FSI").

### A. The Internal Revenue Service Interview Memorandum, the Comisión Federal de Electricidad Spreadsheets and PowerPoint Presentations

On February 11, 2011, government prosecutors Douglas M. Miller, Nicola J. Mrazek and Jeffrey Goldberg met for seven-and-one-half hours with:

- Lic. Fernando Bueno Montalvo, Director de Administracion – Comisión Federal de Electricidad ("CFE")
- Lic. Abel Huitron Rosete, Abogado General – CFE
- Lic. Mariano Ornelas Lopez, Direccion de Administracion – CFE
- Oswaldo Parra Lira, PGR
- Jaime Ortiz, Regaional Attache – PGR
- Rodolfo Mendoza, Special Agent
- Farrell Binder, Special Agent – FBI
- Elizabeth Sebeski, Paralegal Specialist – DOJ
- Sharon Spence, Court Interpreter
- Elisa Cabal, Court Interpreter

*See* Exhibit A, Internal Revenue Service ("IRS") Criminal Investigation Division ("CID") Memorandum of Contact, drafted by Special Agent Rodolfo Mendoza ("Mendoza Memo").

The purpose of the meeting was to interview the three representatives of CFE. The number of attendees at the interview and their titles alone – including all three prosecutors – as well as the length of the interviews suggest the importance

of the meeting. The general counsel of CFE, Abel Huitron Rosete, was one of the CFE representatives present.

A one-and-one-half page memorandum of this seven-and-one-half hour interview was prepared by IRS CID Special Agent Rodolfo Mendoza. Other than the date upon which the interviews took place, February 11th, Agent Mendoza's report is undated. It consists of six numbered paragraphs. This memorandum was not furnished to defense counsel until Saturday, March 19, 2011, over five weeks after the interview took place.

The CFE representatives came to the meeting prepared to engage in a discussion about the relationship between CFE and Lindsey Manufacturing Company ("LMC").[1] They brought with them spreadsheets detailing at least 35 contracts between LMC and CFE. They also brought PowerPoint presentations providing generic background information about CFE and the process by which it contracts with outside vendors and suppliers. Both the spreadsheets and PowerPoint presentation were in Spanish. The PowerPoints made no mention of LMC or Grupo Internacional De Asesores S.A. ("Grupo").

With three exceptions, these spreadsheets detail CFE-LMC contracts from 2002 to 2009. This is the period during which Enrique Aguilar, through his company Grupo, acted as LMC's independent sales representative. Two contracts from before that time period, one each from 1996 and 2000, are shown on one of

///

---

[1] The detailed nature of the presentations, including the preparation in advance of the spreadsheets and generic PowerPoint presentation, and the comprehensive nature of the subject matter discussed suggest that discussions may have preceded the February 11th meeting. No information about earlier communications with CFE in this regard has been provided.

MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT FOR VIOLATIONS OF
*BRADY V. MARYLAND*, OR IN THE ALTERNATIVE, FOR SANCTIONS
3

the spreadsheets.[2]  One CFE-LMC contract post-dating the Enrique Aguilar relationship with LMC, from September 2009, was also included.

### B. Whether Awarded by Bid or Direct Order, Nothing Was Out-of-Order with LMC's Contracts with CFE, and The Contracts Conformed with CFE Contracting Requirements

The spreadsheets summarize 35 contracts between CFE and LMC, including every contract listed in Agent Binder's Affidavit in support of the November 14, 2008 Search Warrant for LMC and Lindsey International, and which form the basis for the charges in the First Superseding Indictment ("FSI").  The spreadsheets reflect that 34 of the 35 contracts conformed with CFE contracting processes.[3]

Moreover, 25 of the 35 contracts on the spreadsheets were "direct purchases" or "direct orders," *see* Exhibit A, Mendoza Memo at ¶ 3, meaning the bidding process was bypassed.  The Mendoza memorandum of the interview states that, "[i]n order to have a direct purchase there has to be a justification." *See* Exhibit A, Mendoza Memo at ¶ 4.  According to Agent Mendoza, the CFE representatives interviewed said that a "special" CFE committee must authorize these sorts of contracts.  These contracts could have been authorized by a central

---

[2] Since LMC had numerous Emergency Restoration System ("ERS") related contracts with CFE starting in at least 1991, the inclusion of only two contracts from that period is puzzling.  In fact, CFE and LMC entered into at least nine contracts with a combined value of approximately $8,857,437,19 during the period 1991 through 2001, all before Mr. Aguilar began representing LMC.

[3] Agent Mendoza's undated report of the interviews indicates the CFE representatives identified a "discrepancy" with one of the CFE-LMC contracts. *See* Exhibit A, Mendoza Memo at ¶ 6.  Apparently, this one contract was non-conforming, because Enrique Aguilar's company, Maquinaria Unida, was also listed as one of the bidders along with LMC. *See* Exhibit A, Mendoza Memo at ¶ 6.

MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT FOR VIOLATIONS OF
*BRADY V. MARYLAND*, OR IN THE ALTERNATIVE, FOR SANCTIONS
4

committee or by one of "forty regional committees." *See* Exhibit A, Mendoza Memo at ¶ 4.

The Mendoza memorandum goes on to state that "[t]he direct order authorizations for Lindsey Manufacturing came from the regional committees." *See* Exhibit A, Mendoza Memo at ¶ 4. This means that the vast majority of the 32 contracts between CFE and LMC during the period when Mr. Aguilar was LMC's independent sales representative (and charged as corrupt in the FSI) were authorized as justified by one of 40 regional committees, not by a central CFE committee at its headquarters.[4] This alone raises a reasonable doubt as to the purported corrupt nature of these contracts.

Moreover, with respect to all but one of the 35 CFE-LMC contracts identified in their spreadsheets and discussed in their day-long interview on February 11th, the CFE representatives "indicated that the Lindsey Manufacturing contracts did not trigger any suspicion from CFE because at face value nothing seemed out of order with the contracts." *See* Exhibit A, Mendoza Memo at ¶ 5. This is evidence that directly refutes the government's key allegations. It should have been provided to the defense immediately.

### C.     The Government's February 15, 2011 Witness List

As noted, the six-paragraph Mendoza memorandum purports to memorialize the interview of the three CFE representatives held throughout the business day of February 11, 2011. The information provided by the three CFE representatives to

---

[4]     An examination of the spreadsheets, in Spanish, also confirms that most of these contracts were for spare parts. This serves to confirm that several of the 40 CFE regions contracted directly with LMC to replace parts, including towers, from the ERS systems previously sold to them by LMC that had been stored at staging locations in these regions for use after the inevitable hurricanes and other disasters. By way of example, if you need spare parts for a Chrysler, you would not seek bids from Honda or Ford.

MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT FOR VIOLATIONS OF
*BRADY V. MARYLAND*, OR IN THE ALTERNATIVE, FOR SANCTIONS
5

three federal prosecutors, two federal law enforcement agents and one Department of Justice ("DOJ") paralegal is classic exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). It should have been provided to the defense immediately, on February 11th or 12th. Instead, the prosecutors waited over five weeks – until just ten days before trial – to produce this exculpatory information.

The Mendoza memorandum coupled with the Spanish-language spreadsheets goes to the heart of the allegations in the FSI. Instead of fulfilling their obligations under *Brady*, the prosecutors engaged in subterfuge. On February 15th, four days after interviewing the three CFE representatives, the government produced its witness list as required by the Court. The names of two of the three CFE representatives interviewed on February 11th, Abel Huitron Rosete and Mariano Ornelas Lopez, appear on the witness list; they were not identified as employees or representatives of CFE. They thus appeared in an undifferentiated fashion along with the approximately 78 prospective government witnesses on the list.

Although the government had interviewed Mr. Huitron Rosete and Mr. Orneles Lopez four days before filing its witness list, it produced no witness statements for them. This violated a pledge made by the government to the Court to produce evidence as it became available and, if necessary, explain the delay in production to the Court. *See* Exhibit B, *United States v. Noriega, et al.*, Transcript of Hearing on December 14, 2010 ("Dec. 14, 2010 Tr."), p. 41, line 22, through p. 43, line 3. Thus, these two CFE representatives appeared to be two of several witnesses the government had put on the list without having interviewed them first. No revelation was made of the favorable evidence these two witnesses possessed and had just provided to the government.

D. **The Government's February 15, 2011 Discovery Production**

The government devoted considerable attention to the materials furnished to it by the three CFE representatives on February 11th. It made another discovery

MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT FOR VIOLATIONS OF
*BRADY V. MARYLAND*, OR IN THE ALTERNATIVE, FOR SANCTIONS
6

production of various materials on February 15th. *See* Exhibit C, Letter from Douglas M. Miller to defense counsel, dated Feb. 15, 2011 ("Feb. 15, 2011 letter"). It produced the Spanish-language spreadsheets and the generic CFE PowerPoint in an undifferentiated fashion, in the middle of over 100,000 pages of other materials. It applied Bates numbers to them that are different from the Bates numbers on the same documents produced to the defense on March 19th.

Moreover, in its cover letter of February 15th transmitting the discovery production, the government did not describe these documents in any specific fashion or identify them as having come from CFE.[5] They appear in section 1.I.b. of the letter, as follows:

> 1.I. Additional documents produced under the Treaty of Cooperation between the United Mexican States and the United States of America for Mutual Legal Assistance on February 8, 2011, as follows:
>
> . . .
>
> b. Various electronic documents, Bates stamped by the Department of Justice as Lindsey_MX_0006459 to Lindsey_MX_006521

*See* Exhibit C, Feb. 15, 2011 letter at p. 2.

---

[5] The five pages of spreadsheets, in Spanish, do not bear any identification of who prepared them or furnished them to the government. The three generic, informational PowerPoint presentations, also in Spanish, total about 50 slides. They are background presentations about CFE, electric power transmission and contracting procedures. The first is entitled "El Abastecimiento en la CFE." It is an overview of the electric power supply functions of CFE. The second is called "Procedimiento de Contratacion Publica en Mexico," or "Public Procurement Procedures in Mexico." It is an overview of the way public contracts are let in Mexico. The third is "Acerca de CFE," or "About CFE." It appears to be an overview of the company. Each bears the CFE logo and slogan. None of the PowerPoint presentations refers to LMC, Grupo or any of the contracts at issue here.

MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT FOR VIOLATIONS OF
*BRADY V. MARYLAND*, OR IN THE ALTERNATIVE, FOR SANCTIONS
7

In short, these Spanish-language documents produced on February 15th were misidentified and buried in over hundreds of thousands of other pages of discovery.[6] The materials do not indicate that they were obtained by the prosecutors at recent interviews of CFE representatives, or that the CFE representatives had prepared the spreadsheets to brief the prosecutors and agents about LMC-CFE contracts. In addition, since the government withheld the February 11th Mendoza interview memorandum (even though it had designated two of the CFE representatives as trial witnesses), the possible significance of the information in the spreadsheets was hidden.

## II. THE DICTATES OF *BRADY v. MARYLAND*

The dictates of *Brady v. Maryland* 373 U.S. 83 (1963) are clear. If the government has exculpatory information, it must disclose it promptly. Failure to do so is a constitutional violation.

In the last several years, in hard-fought, high profile cases, the government has committed what are now well-publicized *Brady* violations.[7] One of those

---

[6] The government's letter states these materials, and thousands of pages of other documents, were obtained by them under the MLAT on February 8, 2011. *See* Exhibit C, Feb. 15, 2011 letter at p. 2. However, the February 11th Mendoza memorandum indicates that the CFE representatives had prepared the spreadsheets and generic PowerPoints for that meeting and had brought them to the meeting for the prosecutors and agents.

[7] *See generally United States v. Stevens,* No. 08-CR-231 (EGS), 2009 WL 6525926, *1 (D.D.C. Apr. 7, 2009) (granting newly appointed prosecution team's motion to set aside verdict and dismiss indictment due to government's failure to produce, until nearly five months after trial, exculpatory notes revealing that key testimony against the defendant was fabricated, despite repeated requests for the information by the defense and admonitions by the court to provide such materials); *United States v. W.R. Grace, et al.*, No. CR 05-07-M-DWM (D. Mont.), Order (Docket No. 1147), pp. 6-14 (government conceded that it violated its *Brady/Giglio* obligations by failing timely to disclose to the defense evidence pertinent to a key government witness, including email exchanges between that witness and a special agent, immunity negotiations with that witness, and other

*Brady* violations cases, tried in our courthouse, resulted in the dismissal of murder and racketeering convictions after a jury conviction.[8]

In the wake of these *Brady* embarrassments, the DOJ directed the various United States Attorney's Offices to be more pro-active and more attuned to *Brady* obligations.[9] The new policy required additional vigilance. Unfortunately, the government again seems to have ignored its constitutional obligations. These *Brady* violations, as set forth below, with their attendant prejudice, require dismissal of the FSI. In the alternative, sanctions that restore the defense to the place it would have been had the government complied with its *Brady* obligations must be imposed.

---

notes reflecting the witness's animus for the defendants and his relationship with the government; violations required (1) continued cross-examination for the defense, (2) no redirect for the government, and (3) a limiting instruction to the jury); *Id.*, Jury Instruction (Docket No. 1150) (informing jury that the government violated its constitutional obligations to the defendants, instructing jury not to consider suspect witness's testimony as to one defendant, and telling jury otherwise to consider witness's testimony with "great skepticism").

[8] *See United States v. Torres-Ramos, et al.*, No. CR 06-656(A)-SVW (C.D. Cal.), Order (Docket No. 924) (dismissing counts 1 and 2 with prejudice); *Id.* Order (Docket No. 930) (dismissing counts 3 and 4 with prejudice); *Id.* Order (Docket 997) pp. 24-33, 39 (summarizing government's admitted *Brady* violations, which caused it to move to dismiss counts 1-4 in the indictment, for failing to disclose that certain benefits were conferred on two key witnesses, including that: the government would have domestic violence charges dropped against one witness; that the government promised both witnesses would get out of jail early; that the government would help one witness keep his house, in violation of federal forfeiture laws; that another witness would receive immunity for an unrelated crime; and that a witness had been promised money for his testimony).

[9] *See* David W. Ogden, *DOJ Memorandum for Department Prosecutors: Guidance for Prosecutors Regarding Criminal Discovery*, January 4, 2010, at http://www.justice.gov/dag/discovery-guidance.html ("Prosecutors are . . . encouraged to provide discovery broader and more comprehensive than the discovery obligations" under *Brady*.).

MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT FOR VIOLATIONS OF *BRADY V. MARYLAND*, OR IN THE ALTERNATIVE, FOR SANCTIONS

9

However, in this case, the latter remedy may no longer exist. A substantial problem has been created by the government "sitting" on crucial *Brady* materials: the late production of this exculpatory information may make use of this critical information at trial impossible. Had the government acted as it should have, by providing this information to the defense when it was received, the defense could have taken steps to secure the evidence. By "sitting" on this *Brady* until the week before trial, the government has effectively deprived the defense of it use. This was a purposeful, serious due process violation requiring dismissal.

### A. The *Brady* Violation

This Court is familiar with some of the underlying facts and the government's allegations. The government claims that LMC, Keith E. Lindsey ("Dr. Lindsey") and Steve K. Lee ("Mr. Lee") knowingly, corruptly and willfully paid money to Enrique Aguilar with the intent that he pay it to certain CFE employees to get or retain business. The charged time period is February 2002, to March 2009.

As part of this scheme, the government contends that LMC was awarded a series of contracts through corruption and bribery.[10] However, the information provided to the prosecutors and agents on February 11th by CFE representatives establishes that these very contracts were awarded in a manner that is not only regular and ordinary, but that was free from suspicion. CFE can engage in

---

[10] Of course, the illogical nature of the government's bribery theory has been discussed at length in the Motion For Evidentiary Hearing Pursuant to *Franks v. Delaware* and the accompanying declarations of Mr. Durkin. No "bribes" were allegedly paid until CFE had granted millions of dollars in contracts to LMC over a period of many years. We now know that those contracts were let in a legitimate, ordinary fashion in which nothing seemed out-of-order to CFE. We also now know that the money supposedly used for the so-called "bribe payments" cannot be identified as LMC money or traced to it. The failure to disclose these things also violated *Brady*.

contracting by open bid or direct contact. The CFE interview statement just produced shows both are legitimate, common methods to contract. Neither is suspect.[11]

There is no direct evidence of knowledge or corrupt intent. Instead, the government is trying to prove knowledge by connecting various pieces of evidence. These pieces include witnesses that will allegedly say that Mr. Lee and Dr. Lindsey should have known that the direct bid contracts to LMC were a sign that corruption and bribery were afoot.

In fact, in a document filed February 28, 2011, *seventeen days after* learning direct contracts are commonplace and that these CFE-LMC contracts were justified and had been authorized, and that LMC's direct bid contracts were correctly awarded, the government argued that evidence to be adduced at trial would be especially incriminating as it showed that LMC's competitor's direct purchase order was highly suspect, and that such awards required a high level approval within CFE. *See* Government's Pretrial Motions (Docket No. 225) (filed under seal). From at least the February 11, 2011 meeting with CFE, the government knew this statement in a motion they filed was *not* true. *See* Exhibit A, Mendoza Memo at ¶ 4.

Indeed, the government is so tied to its position that direct orders are evidence of criminality that it has gone so far as to suggest to witnesses that a

---

[11] As previously discussed, starting in about 2000, LMC was the only company manufacturing and supplying the industry-standard 1070 transmission towers. During the time period charged in the FSI, LMC had no competition. CFE had purchased many of these towers long before Mr. Aguilar became the LMC sales representative and it was happy with them. As a result, LMC was the only bidder on these contracts that went to bid. The other contracts were for spare parts to replenish the supplies purchased earlier. Direct orders of spare parts were justifiable and legitimate. These orders were all approved by one of 40 regional CFE committees, not by CFE headquarters or even by a central committee.

MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT FOR VIOLATIONS OF
*BRADY V. MARYLAND*, OR IN THE ALTERNATIVE, FOR SANCTIONS
11

direct order is "unusual." See Transcript of Sergio Cortez's Grand Jury Testimony, date May 5, 2010, p. 72, line 18 through p. 73, line 5 (a copy can be provided to the Court if requested). Since the CFE representatives directly contradict this government theory, CFE testimony should have been produced immediately.

The prosecutors in this matter have been adamant about their discovery compliance. Mr. Miller has assured the Court that he has produced every piece of relevant evidence and every witness statement. Requests by the parties for further discovery are treated by the government as a bother, something interfering with their own trial preparations. See Exhibit D, Letter from Douglas M. Miller and Jeffrey Goldberg to defense counsel, dated March 18, 2011.[12] However, the government has not only *not* complied with its *Brady* obligations, it has purposefully sought to avoid them. Dismissal is appropriate.

This directly contradicts the government's key assertion that the CFE-LMC direct order contracts were out of order and that LMC, Dr. Lindsey and Mr. Lee knew that something was amiss when they got these contracts.

---

[12] In a letter dated March 21, 2011, Mr. Goldberg and Mr. Miller brushed aside objections made in a letter from defense counsel about the government's failure to produce the exculpatory information in the Mendoza memorandum until ten days before trial. See Exhibit E, Letter from Douglas M. Miller and Jeffrey Goldberg to Ms. Levine and Mr. Handzlik, dated March 21, 2011. The government's response makes it clear that its failure to produce the February 11th interview memorandum of the CFE representatives was calculated and deliberate. The government cites to its (inadequate and deceptive) February 15th discovery disclosure of the Spanish-language spreadsheets, not identified as from CFE, and generic CFE PowerPoints as having fully discharged its obligations. The government says that, as a result, the it will not discuss this subject matter with the defense anymore. In writing this dismissive letter, Mr. Goldberg and Mr. Miller must have overlooked the fact that, also on February 15th, they had designated two of the CFE representatives as trial witness.

MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT FOR VIOLATIONS OF
*BRADY V. MARYLAND*, OR IN THE ALTERNATIVE, FOR SANCTIONS
12

### B. The Prejudice

It is now one week before trial. The defense intends to begin trial as scheduled. The devastating exculpatory information furnished directly to the prosecutors and agents by high-level representatives of CFE on February 11th, may now be beyond the reach of the defense. This exculpatory information has been known to the government for five and one-half weeks. It is admissible through CFE witnesses – Mexican citizens over whom we have no right of process.

While two of these individuals are listed on the government's witness list, that is no assurance they will be present for trial and have the appropriate documents with them to support their testimony.

Had the defense had this information in a timely fashion, it could have attempted to depose the witness under Federal Rule of Criminal Procedure 15, sought other evidence to corroborate this information, and followed through with our own investigation. There is no sound reason and no justification for the government's suppression of this favorable evidence.

### C. The Remedy

The remedy for a *Brady* violation of this magnitude is dismissal. If the defendants are now unable to secure a fair trial due to the government's misfeasance and malfeasance, dismissal is the only appropriate remedy.

Alternatively, the Court could seek to fashion a remedy that protects the defendants' right to a fair trial while penalizing the government in an appropriate fashion. By way of example, the Court could require the government stipulate to the facts to which the CFE witness would have testified in a competent and authoritative fashion, based upon their analysis of the underlying CFE records, namely, that:

1) 34 of the 35 CFE-LMC contracts in issue on this case were compliant with CFE contracting policies;

     2)      One contract in the same time period had a discrepancy that was not related to the allegations in the FSI and not a problem of LMC's doing;

     3)      All of CFE's 25 direct order contracts with LMC during the relevant period were justified and complied with CFE's regulations;

     4)      One of 40 CFE Regional Committees authorized each LMC direct order contracts;

     5)      The LMC contracts appeared normal on their face and did not trigger any suspicions in CFE; and

     6)      Nestor Moreno was an employee in good standing at CFE until September 2010.

Finally, consistent with *W.R. Grace*, the jury should be instructed that the prosecution withheld exculpatory evidence from the defense, contrary to its obligations.

## III. CONCLUSION

Based on the foregoing, the motion should be granted.

DATED: March 22, 2011         Respectfully submitted,

                                       JANET I. LEVINE
                                       CROWELL & MORING LLP

                                       _/s/ Janet I. Levine_____
                                       By: JANET I. LEVINE
                                       Attorney for Defendant
                                       Steve K. Lee

DATED: March 22, 2011         JAN L. HANDZLIK
                                       GREENBERG TRAURIG LLP

                                       __/s/ Jan L. Handzlik_____
                                       By: JAN L. HANDZLIK
                                       Attorneys for Defendants
                                       Lindsey Manufacturing Company and
                                       Keith E. Lindsey

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California, at Crowell & Moring LLP at 515 S. Flower Street, 40th Floor, Los Angeles, California 90071. I am over the age of 18 and not a party to the within action.

On **March 22, 2011**, I served the foregoing document described as **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST SUPERSEDING INDICTMENT FOR VIOLATIONS OF *BRADY V. MARYLAND* OR, IN THE ALTERNATIVE, FOR SANCTIONS; EXHIBITS** on the parties in this action by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies the following:

Douglas M. Miller (Assistant United States Attorney)
Email: doug.miller@usdoj.gov

Nicola J. Mrazek (United States Department of Justice Senior Trial Attorney)
Email: nicola.mrazek@usdoj.gov

Jeffrey Goldberg (United States Department of Justice Senior Trial Attorney)
Email: jeffrey.goldberg2@usdoj.gov

Jan L. Handzlik (Attorney for Defendants Lindsey Manufacturing Company and Keith E. Lindsey)
Email: handzlikj@gtlaw.com

Stephen G. Larson (Attorney for Defendant Angela Maria Gomez Aguilar)
Email: slarson@girardikeese.com
Email: mweber@girardikeese.com

1     I declare under penalty of perjury under the laws of the State of California
2 that the above is true and correct.
3     Executed on **March 22, 2011**, at Los Angeles, California.

          _/s/Kristen Savage Garcia_____
          KRISTEN SAVAGE GARCIA